Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

United States District Court
Southern District of New York

1:20-cv-04505

Jennifer Mena, individually and on behalf of all others similarly situated,

      Plaintiff,

   - against -

Conagra Brands, Inc.,

      Defendant

Class Action Complaint

   Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

   1. Conagra Brands, Inc. ("defendant") manufactures, distributes, markets, labels and sells Chocolate Fudge Pudding under its Snack Pack brand ("Product") in packs of 3.25 OZ cups.

   2. The Product is available to consumers from retail and online stores of third-parties in all fifty (50) states.

   3. The relevant front label representations include "Snack Pack," "Pudding," "Made With Real Milk" and a bottle of overflowing milk.



4. The top of the Product states "Made with Real Milk" with a splash of white, followed by a list of features: 0g of Trans Fat Per Serving, NO Artificial Growth Hormones Used!, NO High Fructose Corn Syrup and NO Preservatives.



5. "Made With Real Milk" appears to have a copyright or trademark symbol at the end of it, but a magnifying glass reveals this symbol to be an asterisk, referenced beneath the four checkmarks: "*Made With Nonfat Milk."

6. In attempting to isolate the "Made With Nonfat Milk" statement for purposes of this complaint, the following message was provided by the computer used:



7. The "Made With Real Milk" claim on the front label has the same asterisk, but nowhere on the front of the Product is there a reference to this symbol.



3

8. The ingredient list shows the Product contains "Nonfat Milk"



INGREDIENTS: WATER, NONFAT MILK, SUGAR, MODIFIED CORN STARCH, COCOA (PROCESSED WITH ALKALI), PALM OIL, LESS THAN 2% OF: SALT, SODIUM STEAROYL LACTYLATE, NATURAL AND ARTIFICIAL FLAVOR.

9. The ingredient list includes "nonfat milk" as well as "palm oil."

10. Milk is defined by FDA is 3.25% milkfat (containing Vitamin A) and 8.25% nonfat milk solids. *See* 21 C.F.R. § 131.110(a); 21 C.F.R. § 131.110(e).

11. The nonfat milk solids consist of milk proteins (casein and albumin), and lactose plus other vitamins and minerals.

12. The Product's total fat content is listed on the Nutrition Facts as 2g per 92g serving.

13. Using nonfat milk instead of whole milk – "real milk" – is not able to achieve an equivalent organoleptic experience that real milk would provide.

14. However, this fat content comes from palm oil, a lower cost replacement for the milkfat in real milk or whole milk.

15. Palm oil is like milkfat because it is a hard fat and unlike liquid vegetable oils such as corn, canola or soybean oils.

16. Palm oil is only fat and lacks any vitamins (such as Vitamin A), minerals or protein.

17. Since Vitamin A is present in milkfat, which is removed from the nonfat milk in the Product, it has negligible Vitamin A compared to the expected 2% Daily Value that "real milk"

4

would have provided.

18. If "real milk," whether dry or fluid, were used instead of nonfat milk and palm oil, the Product would be expected to have higher Daily Values for protein and calcium.

19. Other similar products which highlight the presence of milk truthfully disclose the presence of nonfat milk and do not create the misleading impression that their fat content is provided by milkfat – "real milk" – as shown below.

|   Competitor Pudding Cups   |   Milk Claim   |
|---|---|

 "Skim Milk"



"Milk"



"Non-Fat Milk"

20. Only the Snack Pack Products give consumers the impression that they contain "real milk," understood by consumers as whole milk.

21. Though nonfat milk is milk, it cannot be described as "real" milk because "real" is defined as referring to something in its original or authentic form, which would be milk before the fat is removed.

22. While there is no rule against including nonfat milk *and* palm oil, it is false and

6

misleading to consumers to highlight "real milk" on the Product when the most significant element of "real milk" – milkfat – is replaced with palm oil, which is a lower value nutritionally and in terms of price.

23. The representations of "Real Milk" give consumers the impression that the Product's fat content will come exclusively or predominantly from milkfat.

24. None or a *de minimis* amount of the Product's fat content is from milkfat.

25. Milkfat is an important food component for the demographic this food is marketed towards – growing children – which is why defendant promotes the Product this way.

26. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

27. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

28. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

29. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

30. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.79 for packs of 3.25 OZ cups, excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

31. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

32. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

33. Plaintiff Jennifer Mena is a citizen of Bronx, Bronx County, New York.

34. Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois and is a citizen of Illinois.

35. Diversity exists because plaintiff and defendant are citizens of different states.

36. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, Plaintiff's purchase of the Product and the misleading representations relied upon, were first known in this district.

37. The Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York and this district.

Parties

38. Plaintiff Jennifer Mena is a citizen of Bronx, Bronx County, New York.

39. Defendant Conagra Brands, Inc. is a corporation and one of the largest manufacturers and distributors of packaged foods in the United States.

40. During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal consumption and/or use in reliance on the representations the Product's fat content was exclusively or predominantly from "real milk," understood by her as milk, or whole milk.

41. Plaintiff Jennifer Mena purchased the Snack Pack Product at Western Beef Supermarket in Bronx County, New York in or around fall 2019, for no less than the price identified above per OZ.

42. Plaintiff would buy the Product again if assured "real milk" meant it contained a non-*de minimis* amount of milkfat instead of the fat content provided exclusively by palm oil.

## Class Allegations

43. The class will consist of all purchasers of the Product who reside in New York and Illinois during the applicable statutes of limitations.

44. Plaintiff seeks to certify a class under Federal Rules of Civil Procedure 23(b) seeking injunctive relief.

45. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

46. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

47. Plaintiff is an adequate representatives because her interests do not conflict with other members.

48. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

49. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

50. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

51. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL"), §§ 349 & 350
### (Consumer Protection Statutes)

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Plaintiff and class members desired to purchase and consume products which were

as described and marketed by defendant and expected by reasonable consumers, given the product type.

54. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

55. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

56. The amount and proportion of the characterizing component, milkfat, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

57. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

58. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

61. The amount and proportion of the characterizing component, milkfat, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

62. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

63. This duty is based on defendant's position as an entity which has held itself out as

having special knowledge and experience in the production, service and/or sale of the product type.

64. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

65. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

66. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

67. Plaintiff incorporates by reference all preceding paragraphs.

68. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

69. The Products represented and warranted their main source of fat was from milkfat when it was actually palm oil, a lower price and nutritionally lacking alternative.

70. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

72. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

73. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

74. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Defendant knew its emphasis on the Product's "real milk" content drove sales of the Products and was aware this distinguished its Products from competitors, to the detriment of consumers.

77. Defendant's fraudulent intent is evinced by its failure to accurately describe the key components of the Product on the front labels, when it knew its statements were neither true nor accurate and would mislead consumers.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 12, 2020

                    Respectfully submitted,

                    Sheehan & Associates, P.C.
                    /s/Spencer Sheehan
                    Spencer Sheehan
                    505 Northern Blvd Ste 311
                    Great Neck NY 11021-5101
                    Tel: (516) 303-0552
                    Fax: (516) 234-7800
                    *spencer@spencersheehan.com*
                    E.D.N.Y. # SS-8533
                    S.D.N.Y. # SS-2056

1:20-cv-04505
United States District Court
Southern District of New York

Jennifer Mena, individually and on behalf of all others similarly situated,

                              Plaintiff,

   - against -

Conagra Brands, Inc.,

                              Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: June 12, 2020

                                                                   /s/ Spencer Sheehan
                                                                     Spencer Sheehan