# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER MENA, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-04505 |
| Plaintiff, | Hon. Mary Kay Vyskocil |
| v. | |
| CONAGRA BRANDS, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF CONAGRA BRANDS, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
angela.spivey@alston.com
andrew.phillips@alston.com

Elizabeth Anne Buckel (Bar No. 5186689)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 201-1289
Fax: (212) 210-9444
elizabeth.buckel@alston.com

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

STANDARD .................................................................................................................. 6

ARGUMENT AND CITATION TO AUTHORITY ..................................................... 6

    I.      Plaintiff Fails to Allege Any Actionable Misrepresentation for Her GBL
           Claim to Survive ................................................................................... 6

           A.     No Reasonable Consumer Would Be Misled By the Pudding's
                   "Made With Real Milk*" Label ........................................................ 7

           B.     When Viewed in Context, the Pudding's Packaging Confirms No
                   Reasonable Consumer Would Be Misled By the "Made With Real
                   Milk*" Label. ................................................................................. 13

    II.     Plaintiff's Other Causes of Action Fail ................................................ 17

           A.     Plaintiff's Negligent Misrepresentation Claim Should Be
                   Dismissed Because Plaintiff Cannot Allege She Had a Special or
                   Privity-Like Relationship with Conagra ...................................... 17

           B.     Plaintiff Fails to State Claims for Breach of Express or Implied
                   Warranty Because There Was No Express Representation and the
                   Product Was Merchantable .......................................................... 19

           C.     Plaintiff's Fraud Claim Fails Because Plaintiff Cannot Allege
                   Fraudulent Intent or Allege Fraud with Particularity ................ 21

           D.     Plaintiff's Unjust Enrichment Claim Fails as Duplicative of Her
                   Other Claims ............................................................................... 23

    III.    Plaintiff Lacks Standing to Seek Injunctive Relief .............................. 24

    IV.    Plaintiff Should Be Denied Leave to Amend Her First Amended
           Complaint A Second Time ................................................................... 25

CONCLUSION ............................................................................................................ 25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
　404 F.3d 566 (2d Cir. 2005)..................................................................................18

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).............................................................................................6

*Atik v. Welch Foods, Inc.*,
　No. 15-cv-5405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016) ........................25

*Barreto v. Westbrae Nat., Inc.*,
　No. 19-cv-9677, 2021 U.S. Dist. LEXIS 3436 (S.D.N.Y. Jan. 7, 2021) ........................ passim

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).............................................................................................6, 12

*Bowring v. Sapporo USA, Inc.*,
　234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..............................................................16, 23

*Brown v. Starbucks*,
　No. 18-cv-2286, 2019 U.S. Dist. LEXIS 33211 (S.D. Cal. Mar. 1, 2019) .............................12

*Campbell v. Drink Daily Greens, LLC*,
　No. 16-cv-7176, 2018 U.S. Dist. LEXIS 150468 (E.D.N.Y Sept. 4, 2018) .........................13

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
　No. 1:20-cv-01291, 2021 U.S. Dist. LEXIS 19624 (S.D.N.Y. Feb. 2, 2021) ........................19

*Chase v. Hobby Lobby Stores, Inc.*,
　No. 17-CV-00881, 2017 U.S. Dist. LEXIS 162909 (S.D. Cal. Oct. 2, 2017) ........................23

*Cheslow v. Ghirardelli Chocolate Co.*,
　445 F. Supp. 3d 8 (N.D. Cal. 2020) ..................................................13, 14, 15, 23

*Cohen v. S.A.C. Trading Corp.*,
　711 F.3d 353 (2d Cir. 2013)..................................................................................21

*Cosgrove v. Blue Diamond Growers*,
　No. 19-civ-8993, 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020) ...........................2

*Davis v. Hain Celestial Grp., Inc.*,
　297 F. Supp. 3d 327 (E.D.N.Y. 2018) ........................................................ passim

i

*Dhir v. Carlyle Grp. Emp. Co.*,
  No. 16-cv-06378, 2017 U.S. Dist. LEXIS 162386 (S.D.N.Y. Sept. 29, 2017) .......................7

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14-cv-2484, 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) ...........................24

*Fermin v. Pfizer Inc.*,
  215 F. Supp. 3d 209 (E.D.N.Y. 2016) .......................................................................14, 15, 16

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)..............................................................................................7, 13

*Fitzgerald v. Polar Corp.*,
  No. 20-cv-10877, 2020 U.S. Dist. LEXIS 210157 (D. Mass. Nov. 10, 2020) .............9, 11, 12

*Garcia v. Chrysler Grp. LLC*,
  127 F. Supp. 3d 212 (S.D.N.Y. 2015)....................................................................................21

*Harris v. Mondelez Glob. LLC*,
  No. 19-cv-2249, 2020 U.S. Dist. 133715 (E.D.N.Y. July 28, 2020) .............................. passim

*Henderson v. Gruma Corp.*,
  No. 10-CIV-4173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) .........................9

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015).....................................................................................24

*In re Edgewell Pers. Care Co. Litig.*,
  No. 16-cv-3371, 2018 U.S. Dist. LEXIS 209023 (E.D.N.Y. Sep. 4, 2018) ...........................25

*In re Frito-Lay N. Am., Inc.*,
  No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)......................22

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ...................................................................................6, 7, 13

*Kennedy v. Mondelez Glob. LLC*,
  19-cv-302, 2020 U.S. Dist. LEXIS 124538 (E.D.N.Y. July 10, 2020)........................... passim

*Kimmell v. Schaefer*,
  89 N.Y.2d 257 (1996) ............................................................................................................18

*Kolle v. Mainship Corp.*,
  No. 04-cv-711, 2006 U.S. Dist. LEXIS 28956 (E.D.N.Y. Apr. 20, 2006) .............................20

*Manchouck v Mondeléz Int'l, Inc.*,
  No. 13-CIV-02148, 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013)....................9

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ......................................................................................17

*Melendez v. One Brands, LLC*,
    No. 18-cv-06650, 2020 U.S. Dist. LEXIS 49094 (E.D.N.Y. Mar. 16, 2020)....................14, 15

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
    898 F.3d 243 (2d Cir. 2018).............................................................................25

*Nelson v. MillerCoors, LLC*
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................................15

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)...............................................................................6

*Pichardo v. Only What You Need, Inc.*,
    No. 20-cv-493, 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020)............................2

*Red v. Kraft Foods, Inc.*,
    No. 10-civ-1028, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ........................10

*Sarr v. BEF Foods, Inc.*,
    No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ................... passim

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*,
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) .............................................................21, 23

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994).............................................................................21

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-cv-6154, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015) ...........................3

*Solak v. Hain Celestial Grp., Inc.*,
    No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018)..................14, 15

*Steele v. Wegmans Food Mkts., Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020).....................................................................2

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    No. 20-CV-763, 2021 U.S. Dist. LEXIS 26489 (S.D.N.Y. Feb. 11, 2021).................... passim

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015)..............................................................20, 23

*Winston v. Hershey Co.*,
    No. 19-CV-3735, 2020 U.S. Dist. LEXIS 247128 (E.D.N.Y. Oct. 26, 2020).............13, 14, 15

## RULES

Fed. R. Civ. P. 9 .................................................................................................21, 22, 23

Fed. R. Civ. P. 12 ...............................................................................................................6

## STATUTES

21 C.F.R. § 101.62(b) ......................................................................................................11

21 C.F.R. § 131.110(a) .....................................................................................................11

21 C.F.R. § 1240.61 ..............................................................................................2, 7, 10

21 U.S.C. §§ 343(w)(1) .....................................................................................................10

**INTRODUCTION**

Plaintiff claims she is a reasonable consumer, but her Complaint shows that she is anything but.  Her central allegation is that Conagra's Chocolate Fudge Pudding Snack Pack is falsely labeled as "Made with Real Milk*" because it is made with nonfat milk.  She bases this claim on an irrational belief that "Made with Real Milk*" insinuates the Pudding either is made with milk in "its original and unmodified form" (even though such unpasteurized, raw milk is illegal to sell in the U.S.) or that it is made with whole milk.  Critically, Plaintiff only reaches these unreasonable conclusions because she admittedly ignores (1) the on-label asterisk in the phrase "Made with Real Milk*[,]" which directs the consumer to the disclosure "*Made With Nonfat Milk" <u>and</u> (2) the product ingredient list identifying non-fat milk as the second ingredient by predominance.  As legions of courts in this Circuit and beyond have concluded, such speculative, unilateral assumptions—untethered to the actual product packaging and disclosures—do not state a plausible claim for relief, not in the least because no reasonable consumer would be misled by the Pudding's labeling.

Perhaps Plaintiff said it best in her original Complaint when she conceded that "[n]onfat milk is milk."  Compl. (Dkt. 1) ¶ 21.  Although Plaintiff now attempts to erase that admission via amendment, it still underscores a fundamental point: no reasonable consumer would be misled because they would not believe that nonfat milk is any more—or less—"real" than whole milk, 2% milk, skim milk, or any other cow's milk product that a typical consumer will find in the dairy section of a supermarket.  Milk is milk.  There is nothing misleading about the label "Made With Real Milk*."  Nor can Plaintiff point to any misrepresentation on the Pudding's labeling.  The Pudding's ingredients statement and labeling disclosures plainly state that the Pudding is made with nonfat milk, and nowhere does the Pudding state it is made with whole milk, that milkfat is the exclusive (or even main source) of the Pudding's fat content, or that it contains no

1

other fats or oils.  Indeed, Plaintiff's position that milk must be in its "original or unmodified form" would logically require the Pudding to be made with unpasteurized or raw milk, which has been illegal under federal law since 1987. *See* 21 C.F.R. § 1240.61. In short, no reasonable consumer would interpret the label as Plaintiff alleges.

This case is one of **hundreds** of similarly frivolous suits brought by Plaintiff's counsel Spencer Sheehan—many of them in this District—challenging "made with real" labeling, vanilla labeling, and other ingredient and flavor labeling on food products.  His nationwide legal blitz recently gained notoriety with the press. *See* Corinne Ramey, *The Case for Plain Vanilla Gets Its Day in Court*, The Wall Street Journal (Feb. 7, 2021).[1] But courts have soured on these cases and see them for exactly what they are: contrived challenges to food labels that do not—and would not—deceive a reasonable consumer.  New York federal courts have not hesitated in dismissing these lawsuits, sending both "made with real" and similar suits out to pasture. *See, e.g., Harris v. Mondelez Glob. LLC*, No. 19-cv-2249, 2020 U.S. Dist. 133715, at *5-6 (E.D.N.Y. July 28, 2020) ("made with "real' cocoa"); *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594, at *12 (E.D.N.Y. Feb. 13, 2020) ("made with real . . . butter"); *Kennedy v. Mondelez Glob. LLC*, 19-cv-302, 2020 U.S. Dist. LEXIS 124538, at *35–38 (E.D.N.Y. July 10, 2020) ("made with real honey"); *see also Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493, 2020 U.S. Dist. LEXIS 199791, at *14 (S.D.N.Y. Oct. 27, 2020); *Cosgrove v. Blue Diamond Growers*, No. 19-civ-8993, 2020 U.S. Dist. LEXIS 229294, at *12 (S.D.N.Y. Dec. 7, 2020); *Barreto v. Westbrae Nat., Inc.*, No. 19-cv-9677, 2021 U.S. Dist. LEXIS 3436, at *25-26 (S.D.N.Y. Jan. 7, 2021).

Plaintiff's suit here is virtually identical to *Harris*, *Sarr*, and the array of other recently

---

[1]  Available   at:   https://www.wsj.com/articles/the-case-for-plain-vanilla-gets-its-day-in-court-11612724626 (last accessed 2/24/21).

dismissed "made with real" cases. Plaintiff's claims should be dismissed because the label "Made With Real Milk*" is accurate and would not mislead a reasonable consumer and, separately, because the truthful statements on the Pudding would dispel any irrational understanding. Plaintiff's claims also fail for the additional reasons set forth below. Each of Plaintiff's common law claims fail because she does not—and cannot—allege facts in support of their necessary elements. Finally, Plaintiff lacks standing to seek injunctive relief because she now knows the "truth" about the Pudding, and, therefore, there is no danger that she will again be "deceived." All of Plaintiff's claims fail, and the Court should dismiss her FAC with prejudice.

## BACKGROUND

Conagra produces, markets, and sells chocolate fudge pudding products as part of its Snack Pack product line, including the Chocolate Fudge Pudding Snack Pack product at issue here (the "Pudding"). Second Am. Compl. (Dkt. 18) ("SAC" or "Complaint") ¶ 1. The front of the Pudding's packaging truthfully and accurately states that it is "Made with Real Milk*." *Id.* ¶ 4. A second "Made with Real Milk*" statement appears at the top of the Pudding packaging. *Id.* ¶ 5. Both of these statements contain asterisks that coincide with a disclosure at the top of the Pudding's packaging that the Pudding is "*Made With Nonfat Milk[,]" *id.*:[2]

---

[2] Because the images set forth in Plaintiff's Complaint appear cropped, Defendant has utilized uncropped images of the same product in this motion. The Court may take judicial notice of the uncropped images without converting this motion into a motion for summary judgment. *See Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154, 2015 U.S. Dist. LEXIS 122186 at *2-3 (E.D.N.Y. Sept. 14, 2015) (taking judicial notice of label and packaging).



As federally mandated by the FDA, the Pudding label contains an ingredient statement that identifies all the ingredients contained in the Pudding.  *See id.* ¶ 9.  Again here, the Pudding truthfully and accurately discloses that it contains milk (specifically, nonfat milk) and palm oil, along with other ingredients in order of predominance.  *See* FAC ¶ 9. The label also contains a federally-mandated food allergen statement, again disclosing that the Pudding "**Contains: Milk**[,]" *see id.*:



Paying no mind to these repeated, truthful disclosures that the Pudding was made with nonfat milk, Plaintiff alleges that Conagra's labeling of the Pudding as "Made with Real Milk*" is false and deceptive. *See, e.g.*, *id.* ¶ 33. The reason? From Plaintiff's skewed telling, "[c]onsumers understand the term 'real' to describe something in its original and unmodified form." *Id.* ¶ 12. Therefore, Plaintiff claims, Conagra cannot promote the Pudding as "Made with Real Milk*" when it was made with nonfat milk—milk that is no longer in its "original and unmodified form" and that contains a *de minimis* amount of milkfat. *Id.* ¶¶ 12, 31, 32. She alleges that she purchased the Pudding based on her belief that the Pudding's "fat content was exclusively or predominantly from 'real milk,' understood by her as whole milk." *Id.* ¶ 47.

Plaintiff asserts five causes of action: (1) violation of §§ 349 and 350 of New York's General Business Law ("GBL"); (2) common law negligent misrepresentation; (3) breach of express warranty, implied warranty, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (4) common law fraud; and (5) common law unjust enrichment.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A plaintiff, however, cannot carry her burden with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A complaint's ***factual*** allegations instead "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A court also must "draw on its judicial experience and common sense" to determine whether a claim is plausible.   *Iqbal*, 556 U.S. at 679.   Plaintiff cannot meet even these basic pleading requirements, and her Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Plaintiff Fails to Allege Any Actionable Misrepresentation for Her GBL Claim to Survive

To state a claim under New York's GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."   *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).   To prove conduct is materially misleading, Plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled.   *Id.*   To survive dismissal, Plaintiff must "do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."   *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018).   Rather, Plaintiff must plausibly allege "that a ***significant portion*** of the general consuming public or of targeted [customers], acting reasonably in the circumstances, could be misled."   *Id.*   (emphasis added).

Plaintiff falls far short of stating a claim for violation of New York's GBL under this standard. The statement "Made With Real Milk*" is not misleading as a matter of law, and Plaintiff's Complaint cannot plausibly allege that reasonable consumers share Plaintiff's bizarre interpretation of Conagra's labeling. The Court, therefore, should dismiss Plaintiff's SAC with prejudice. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

### A. No Reasonable Consumer Would Be Misled By the Pudding's "Made With Real Milk*" Label

Plaintiff's central allegation is that Conagra's labeling—that the Pudding is "Made with Real Milk*"—falsely insinuates that the Pudding contains milkfat because it either is made with milk in "its original and unmodified form" (which would be illegal) or that it is made with whole milk. *See* SAC ¶¶ 12, 32, 47. These claims are patently unreasonable, not in the least because they fail by Plaintiff's own standards. If it is truly Plaintiff's position that consumers understand the "term 'real' to describe something in its original or unmodified form[,]" then no pasteurized milk product sold in the United States could ever possibly qualify as "real" milk. *See generally* 21 C.F.R. § 1240.61 (requiring pasteurization for all milk and milk products intended for human consumption). Claiming that consumers hold an absurd understanding of the term "real" does not make it so. *See Dhir v. Carlyle Grp. Emp. Co.*, No. 16-cv-06378, 2017 U.S. Dist. LEXIS 162386, at *20-22 (S.D.N.Y. Sept. 29, 2017) (dismissing theory of fraud that "contradicts not only common sense, but also other allegations in Plaintiff's own complaint"). Plaintiff's other allegation that she believed "Real Milk*" must mean "whole milk" fares no better. *See* FAC ¶ 47. This unilateral belief defies common sense and consumers' everyday grocery experience. It falls woefully short of plausibly showing that a *significant portion* of "the general consuming public acting reasonably" could be misled. *Jessani*, 744 F. App'x at 19.

7

In analogous cases, courts have dismissed challenges to similar "made with real" labeling (including a number raised by Mr. Sheehan) because no reasonable consumer would be misled. In one case brought by Mr. Sheehan, the Eastern District dismissed with prejudice the plaintiff's New York GLB claim challenging mashed potatoes labeled as "Made With Real . . . Butter" because it was "not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats." *Sarr*, 2020 U.S. Dist. LEXIS 25594, at *12.  The "statement [that the Mashed Potatoes contained real butter] was true," *id.* at *21-22, and the defendant made no representation that the Mashed Potatoes did not contain other fats or oils.  *Id.* at *22.  The court similarly rejected the plaintiff's challenge to the phrase "farm-fresh goodness" because no reasonable consumer would believe that the mashed potatoes arrived freshly from a farm.  *Id.* at *15.  Common sense dictated that "mashed potatoes is a cooked dish and obviously requires some amount of processing between the cultivation of its ingredients on a farm and its arrival on the dinner table."  *Id.*

Another case brought by Mr. Sheehan in the Eastern District challenged the statement "made with real honey" for graham crackers, but that, too, failed as a matter of law.  *Kennedy v.*, 2020 U.S. Dist. LEXIS 124538, at *35–38, *R&R adopted* (Sept. 17, 2020).  There, the plaintiff admitted that the graham crackers were made with honey; thus, "'made with real honey' [was] a factually true statement about the product."  *Id.* at *36.  The court found there was "no basis for a reasonable consumer to make any of the inferences that Plaintiffs allege are misleading": the graham cracker did ***not*** "state anywhere that honey is the only ingredient; only pure honey, unmixed with any other sweetener, is in the product; or that no honey-flavoring or artificial honey additive is in the product."  *Id.*  Again, common sense dictated that, upon learning that the

8

graham crackers contain honey, reasonable consumers would not expect "that the honey is present in a particular form or not mixed with other ingredients." *Id.* at *38.

These cases illustrate a growing body of caselaw that courts will not allow meritless labeling challenges that defy common sense. *See, e.g.*, *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 335, 336 (E.D.N.Y. 2018) ("'Cold pressed' does not cease to be a truthful moniker for the juice simply because there were subsequent steps in the juice's production process. . . . A reasonable consumer . . . would not have expected to receive an unprocessed cold-pressed juice."); *Fitzgerald v. Polar Corp.*, No. 20-10877, 2020 U.S. Dist. LEXIS 210157, at *9–11 (D. Mass. Nov. 10, 2020) (rejecting the claim that "made from real ginger" was misleading because the plaintiff conceded that the product contained ginger—even if an allegedly "miniscule" amount—and common sense dictated that no reasonable consumer would understand the label to mean the ginger ale contained "chunks of ginger root"); *Harris*, 2020 U.S. Dist. LEXIS 133715, at *5-6 ("[I]t is not misleading for Defendant to represent that its Oreos are made with 'real' cocoa when they in fact contain cocoa. The crux of Plaintiffs' claim is not that the label misrepresents the quantity or proportion of cocoa; they allege that the cocoa it contains is not 'real' in light of the application of alkali."); *Manchouck v Mondeléz Int'l, Inc.*, No. C 13-02148, 2013 U.S. Dist. LEXIS 138877, at *7-9 (N.D. Cal. Sept. 26, 2013) (dismissing with prejudice claim that "made with real fruit" on fig cookie labels deceptively implied product excluded mechanically processed puréed fruit "strains credibility"); *Henderson v. Gruma Corp.*, No. 10-CIV-4173, 2011 U.S. Dist. LEXIS 41077, at *33-34 (C.D. Cal. Apr. 11, 2011) (dip packaging claiming made "with garden vegetables" not likely deceptive to a reasonable consumer where product contained avocado powder, dehydrated onion, garlic powder, and bell pepper and thus "contain[ed] vegetables that can be grown in a garden").

9

So too here.  Plaintiff's Complaint defies common sense and challenges labeling that would not mislead any reasonable consumer.  The Pudding states that it is "Made With Real Milk*," which it is.  The Pudding contains an allergen statement that it contains "**Milk**[,]" which it must.  SAC ¶ 9; *see* 21 U.S.C. §§ 343(w)(1) (requiring disclosure that a product "Contains" a "major food allergen"); 321(qq)(1) (defining "major food allergen" to include "Milk").  The Pudding's label does *not* state: that it is made with whole milk; that it is made with milk in its unpasteurized, "original or unmodified form" (which would be illegal, *see* 21 C.F.R. § 1240.61); that milkfat is the exclusive (or even main source) of the Pudding's fat content; or that it contains no other fats or oils.  *Kennedy*, 2020 U.S. Dist. LEXIS 124538 (rejecting similarly contrived inferences from the plain language of the labeling).  Plaintiff's irrational, unilateral belief that nonfat milk somehow is not "Real Milk*" is conclusory and contrary to the experience of typical consumers who see a variety of cow's milk in their supermarkets' dairy section—each of which is as "real" as the next.  *See, e.g.*, *Kennedy*, 2020 U.S. Dist. LEXIS 124538, at *35–38; *Sarr*, 2020 U.S. Dist. LEXIS 25594 at *12–13; *Harris*, 2020 U.S. Dist. 133715, at *5-6.  Dismissal is appropriate where, as here, the Complaint "alleges that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says."  *Red v. Kraft Foods, Inc.*, No. 10-civ-1028, 2012 U.S. Dist. LEXIS 164461, at *9 (C.D. Cal. Oct. 25, 2012).

Plaintiff's remaining efforts to argue that nonfat milk cannot be "Real Milk*" are speculative and meaningless.  **First**, Plaintiff cherry-picks FDA regulations to argue "[m]ilk is defined as 3.25% milkfat (containing Vitamin A) and 8.25% nonfat milk solids."  SAC ¶ 23 (*citing* 21 C.F.R. § 131.110(a)).  But the regulation cited by Plaintiff *also* states that milk may be "adjusted by separating part of the milkfat therefrom."  21 C.F.R. § 131.110(a).  Additionally,

neither "nonfat milk" nor "whole milk" has a separate FDA standard of identity – each is just a variety of milk.  Nonfat milk is merely milk which meets the regulatory requirements for a "nonfat" or "skim" nutrient content claim. 21 C.F.R. § 101.62(b). Thus, pursuant to FDA regulations, nonfat milk is unequivocally real milk that—like 2% milk or 1% milk —simply has less fat than whole milk.  Each is "real" milk.  But even setting aside Plaintiff's erroneous regulatory argument, the Complaint is devoid of any allegation that reasonable consumers embrace Plaintiff's irrational understanding of "Real Milk*" and are deceived by the Pudding's labeling.

*Second*, Plaintiff's allegations about the organic makeup, characteristics, and nutritional content of nonfat milk versus whole milk fails to state a plausible basis for her claims.  *See* SAC ¶¶ 13-28, 62.  Plaintiff concedes the Pudding contains milk, *see* SAC ¶ 28, and there is "no basis for a reasonable consumer to make any of the inferences that Plaintiff[] allege[s] are misleading[.]" *Kennedy*, 2020 U.S. Dist. LEXIS 124538, at *36.  Courts have rejected similarly wishful claims, including those raised by Mr. Sheehan.  *See, e.g.*, *id.* at *6, 36 (in "real honey" suit brought by Mr. Sheehan, rejecting claims that the defendant "misrepresented the substance, nutritional value, and other characteristics" with "made with real honey" label); *Harris* 2020 U.S. Dist. LEXIS 133715, at * 7-8 (in "real cocoa" suit brought by Mr. Sheehan, rejecting claims that cocoa was processed with alkali which allegedly diminished the health benefits, quality, and taste of the cocoa); *Fitzgerald*, 2020 U.S. Dist. LEXIS 210157, at *6-7, 10–11 (in "real ginger" suit, rejecting claims that the allegedly "microscopic" amount of ginger flavor extract provided none of the health benefits associated with real ginger).

Moreover, no reasonable consumer would make the incredible leap that Conagra misrepresented the nutritional qualities of a pudding product.  As one court put it, "[a]ny

reasonable consumer would know ginger ale for what it is—a carbonated drink with ginger flavoring and probably containing an unhealthy amount of sugar. Nothing about the 'made from real ginger' claim is deceptively untrue, and no public policy is served by allowing this matter to percolate further." *Fitzgerald*, 2020 U.S. Dist. LEXIS 210157, at \*11-12; *see also Brown v. Starbucks*, No. 18-cv-2286, 2019 U.S. Dist. LEXIS 33211, at \*9 (S.D. Cal. Mar. 1, 2019) ("The Gummies are clearly visible to the consumer through the transparent packaging. Nothing about the product itself—a brightly-colored, gelatinous candy—would lead a reasonable consumer to conclude that the Gummies contain only natural ingredients."). Here, too, reasonable consumers know Snack Pack Puddings for exactly what they are: sweet, indulgent snacks and desserts. There is nothing about puddings, and specifically this Pudding, that would cause reasonable consumers to irrationally place stock in the hope that it might contain compounds like branched-chain amino acids (FAC ¶ 24), short-chain fatty acids (*id.* ¶ 15), or even "2% of the daily value of Vitamin A" that Plaintiff alleges some amount of whole milk provides (*id.* ¶ 28).

*Third*, Plaintiff's reference to the *front* labels of other manufacturers' pudding products does nothing to propel her claims across the line even from inconceivable to conceivable, much less "across the line . . . to plausible" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570; *see* SAC ¶ 29 (alleging other pudding products' front labels state "Made With Milk[,]" "Made With Skim Milk[,]" or "Made With Nonfat Milk"). Plaintiff argues "Defendant's Product is deceptively labeled compared to other similar products" in the market (SAC ¶ 29), but a quick Google search gives proof to the lie. For example, while the front panel of the JELL-O brand chocolate pudding included in the SAC states simply "Made with Milk" (*id.*), the rear panel of

the same product discloses it is made with skim milk[3]—in other words, to both reasonable consumers and competitors alike, milk is milk. Moreover, "anecdotal allegations of consumer confusion" are insufficient to state a plausible claim that labeling would mislead a reasonable consumer. *See, e.g.*, *Winston v. Hershey Co.*, No. 19-CV-3735, 2020 U.S. Dist. LEXIS 247128, at *12 (E.D.N.Y. Oct. 26, 2020); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020).  Plaintiff's anecdotal references to partial labels of competing products are red herrings that have no bearing on whether a reasonable consumer would be misled. *Id.*; *Campbell v. Drink Daily Greens, LLC*, No. 16-cv-7176, 2018 U.S. Dist. LEXIS 150468, at *9 n.4 (E.D.N.Y Sept. 4, 2018) (rejecting as misleading the plaintiff's use of cropped images of competitors' products because they omit the full labels in context).

In short, Plaintiff cannot meet the basic requirement that she plausibly allege "that a significant portion of the general consuming public or of targeted [customers], acting reasonably in the circumstances, could be misled" by the statement "Made With Real Milk*[.]"  *Jessani*, 744 F. App'x at 19.  She does not come even close.

### B.  When Viewed in Context, the Pudding's Packaging Confirms No Reasonable Consumer Would Be Misled By the "Made With Real Milk*" Label.

Although the Court need not go any further than the statement "Made With Real Milk*" to conclude that reasonable consumers do not share Plaintiff's bizarre interpretation of Conagra's labeling, it may also consider the ***entire*** Pudding packaging to conclude that there is nothing about the Pudding's labeling that would mislead a reasonable consumer.  *See, e.g.*, *Sarr*, 2020 U.S. Dist. LEXIS 25594, at *11.  The Second Circuit observed that, for claims under New York's GBL, "context is crucial."  *Fink*, 714 F.3d at 742.  Courts in this Circuit, therefore, "consider 'the entire context of the [package]'" because a disclaimer, other clarifying language,

---

[3]  Image available here.  Because Plaintiff included a partial image of this label the Court may take judicial notice of the entire label.  *See supra* at n.2.

or even an ingredients list may defeat even a colorable claim of deception.  *See, e.g.*, *Sarr*, 2020 U.S. Dist. LEXIS 25594, at *11; *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016).  Here, there are, not one, but two independent sets of information on the Pudding that would dispel any irrational interpretation of the statement "Made With Real Milk*."

   ***First***, the Pudding's ingredients statement forecloses any claim that consumers would be misled.  The ingredients statement unambiguously specifies that the Pudding was made with "Nonfat Milk[,]" "Palm Oil[,]" and other ingredients.[4]  *See* SAC ¶¶ 9-10.  It just as plainly indicates that the Pudding was *not* made with whole milk.  *See id.*  Courts routinely find "that where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list." *Cheslow*, 445 F. Supp. 3d at 20.  In fact, it is "***exactly the spot consumers are trained to look***." *Davis*, 297 F. Supp. 3d at 337 (emphasis added); *see also, e.g.*, *Winston*, 2020 U.S. Dist. LEXIS 247128, at *11-12; *Melendez v. One Brands, LLC*, No. 18-cv-06650, 2020 U.S. Dist. LEXIS 49094, at *18-19 (E.D.N.Y. Mar. 16, 2020); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270, at *14 (N.D.N.Y. Apr. 17, 2018).

   These cases are indistinguishable from this suit.  The Pudding's ingredients statement plainly identifies that the Pudding was made with nonfat milk, and nowhere does the Pudding state that: it is made with whole milk or that milkfat is the exclusive (or even main source) of the Pudding's fat content.  If a reasonable consumer had any question as to the milk used in the Pudding, "[t]he ingredient list[] thus clarif[ies]—in exactly the spot consumers are trained to look—that [the Pudding was made with nonfat milk]. No reasonable consumer could have been misled in light of this clarifying language."  *Davis*, 297 F. Supp. 3d at 337.  "Plaintiff[] and the general consuming public are not free to ignore the ingredient list that does not include the words

---

[4] Plaintiff even makes the effort to highlight these ingredients in her SAC.  *Id.* ¶¶ 9-10.

[whole milk].” *Cheslow*, 445 F. Supp. 3d at 20; *see also Winston*, 2020 U.S. Dist. LEXIS 247128, at *11-12 (“[T]here is no similar misleading word or phrase on the packaging; rather, the ingredient list confirms what the absence of the word ‘chocolate’ on the packaging suggests—that Reese’s White [candy] is not white chocolate.”); *Melendez*, 2020 U.S. Dist. LEXIS 49094, at *18-19 (concluding that the “1g sugar” statement on the front label would not mislead a reasonable consumer because “any potential ambiguity created by the front label regarding the bars’ carbohydrate and caloric contents is readily clarified by” nutrition facts panel); *Solak*, 2018 U.S. Dist. LEXIS 64270, at *14 (“[T]he list of ingredients . . . makes abundantly clear that the Product contains only processed derivatives of the pictured vegetables, and not the fresh vegetables themselves. It therefore strains credulity that any consumer would honestly conclude that the Product contains any nonprocessed vegetables[.]”).   The Court, therefore, should follow this great weight of authority and dismiss Plaintiff’s claims with prejudice.

  ***Second***, the additional disclosure (contained on the top of the Pudding package) that the Pudding was “*Made With Nonfat Milk” forecloses any baseless claim that a reasonable consumer would be misled.  *Fermin*, 215 F. Supp. 3d at 211-12.  Other courts in this Circuit have dismissed New York GBL claims challenging labeling that contained similarly placed disclosures.  For instance, in *Nelson v. MillerCoors, LLC* the Eastern District dismissed claims that the defendant-brewer misrepresented that Foster’s beer was brewed in Australia instead of the United States.  246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017).  The court noted that each can, bottle, or keg disclosed that the beer was brewed and packaged in “Albany GA and Fort Worth TX.”  *Id*. at 675.  These disclosures were placed on the side of the defendant’s beer cans or bottles or on the caps of defendant’s beer kegs.  In dismissing the plaintiff’s New York GBL

claim, the court noted that "every single representation Plaintiff pleaded reliance on, across every medium, is accompanied by language indicating the beer is brewed in the United States. In sum, the images of a kangaroo and a constellation and 'allusion to the company's historic roots in [Australia] are eclipsed by the accurate disclosure statement.'"  *Id.* at 676; *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017) (dismissing claim under New York GBL that Sapporo Beer was brewed in Japan, based on similarly sized and placed disclosures on the beer cans and bottles); *Fermin*, 215 F. Supp. 3d at 211-12 (dismissing New York GBL claim that alleged consumers were misled because of "excessive empty space" in Advil containers, where the label unambiguously displayed the number of pills and it "defie[d] logic to accept that the reasonable consumer would not rely upon the stated pill count").

These cases are analogous to the disclosure at issue here.  This disclosure appears below one of the "Made With Real Milk*" statements on the top labeling, and it is demarcated by the same asterisk that accompanies the "Made With Real Milk*" statements.  Tellingly, there is no allegation that Plaintiff failed to see "*Made With Nonfat Milk" disclosure.  *See generally* SAC. Plaintiff instead attempts to discount the significance of the disclosure with irrelevant, inane allegations regarding her counsel's purported technical inability to enlarge a ***computer image*** of the disclosure (*See* SAC ¶¶ 6-7) despite the fact that the "Made With Real Milk*" disclosure is clearly visible and legible in two separate images contained in the SAC itself.  *See* SAC ¶ 5. These allegations provide no ***facts*** of the circumstances surrounding Plaintiff's—or any reasonable consumer's—purchase of the Pudding. The Court should reject them as wholly speculative and conclusory.  *See Sarr*, 2020 U.S. Dist. LEXIS 25594, at *33 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

16

The Court, therefore, should find that the accurate ingredient list identifying "nonfat milk" as the second ingredient in order of predominance and "*Made With Nonfat Milk" disclosure provide an additional, independent basis for concluding that Plaintiff fails to plausibly allege that a reasonable consumer would be misled and dismiss Plaintiff's New York GBL claim with prejudice.

## II.     Plaintiff's Other Causes of Action Fail

Plaintiff attempts to use the same failed allegations to assert other common law claims against Conagra. *See generally* SAC ¶¶ 66-86.  But *all* of these claims fail because Plaintiff's core premise—that milk somehow cannot be milk—is not based on a reasonable reading of the challenged claims, defies common sense, and fails as a matter of law.  Just as in the *Kennedy*, *Reyes*, *Harris*, and *Nelson* cases cited above, Plaintiff's common law claims all fail because she does not—and cannot—identify a single actionable misrepresentation.  But even if Plaintiff's theory of consumer deception somehow survived, however, these other common law claims all still independently fail as a matter of law.

### A.     Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed Because Plaintiff Cannot Allege She Had a Special or Privity-Like Relationship with Conagra

As a threshold matter, for all the reasons stated *supra,* Plaintiff has not pled an actionable misrepresentation.  *See, e.g.*, *Kennedy*, 2020 U.S. Dist. LEXIS 124538, at *40-41.  Additionally, Plaintiff's negligent misrepresentation claim does not survive under New York law for her arm's length consumer transaction with a third-party supermarket.  In New York, there instead must be "a special or privity-like relationship" of such significance that it imposes an exceptional duty of care "on the defendant to impart correct information to the plaintiff."  *Sarr*, 2020 U.S. Dist. LEXIS 225954, at *17 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)).  A special relationship exists only if the defendant "possess[es] unique or specialized

expertise or is in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.*

Plaintiff's Complaint makes clear no such special relationship exists. The only factual allegations that Plaintiff provides is that she is a consumer who purchased the Pudding at Western Beef Supermarket in Bronx County, New York. SAC ¶ 48. She was not in privity with Conagra for this purchase, and the Complaint is devoid of any allegation that she has ever had any sort of relationship with Conagra. *See id.* A negligence misrepresentation claim, therefore, cannot lie under New York law for the consumer transaction at issue in this suit. *See Sarr*, 2020 U.S. Dist. LEXIS 225954, at *17-18 (observing that no such relationship exists, however, where the statement "is directed at a 'faceless o[r] unresolved class or persons[.]'" (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005)); *cf. Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (observing that such a "special relationship" exists between the plaintiffs-investors in a limited partnership and the defendant, an attorney who served as a director of an affiliated company and who personally solicited plaintiffs as investors).

Plaintiff half-heartedly alleges that Conagra is a "well-known and respected brand or entity in this sector," SAC ¶ 70, but courts have dismissed similar claims, including those raised by Mr. Sheehan, observing that a defendant's "status as a trusted brand . . . does not give rise to a duty to impart correct information [to Plaintiff and] . . . a 'faceless o[r] unresolved class' of consumers." *Sarr*, 2020 U.S. Dist. LEXIS 225954, at *18; *see Twohig v. Shop-Rite Supermarkets, Inc.*, No. 20-CV-763, 2021 U.S. Dist. LEXIS 26489, at *22 (S.D.N.Y. Feb. 11, 2021) (in an action brought by Mr. Sheehan, concluding that the consumer transactions at issue were "insufficient to establish a special relationship for purposes of a negligent representation claim"); *Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 1:20-cv-01291-GHW, 2021 U.S. Dist.

LEXIS 19624, at *31 (S.D.N.Y. Feb. 2, 2021) (in an action brought by Mr. Sheehan, concluding the "relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship").

Moreover, Plaintiff's bland, conclusory allegation that Conagra "held itself out as having special knowledge and experience in the production, service and/or sale of the product type" manages nothing and is nearly verbatim of the allegations that the *Sarr* and *Twohig* courts rejected.  *See Sarr*, 2020 U.S. Dist. LEXIS 225954, at *19-20; *Twohig*, 2021 U.S. Dist. LEXIS 26489, at *22; *see also Barreto v. Westbrae Nat., Inc.*, No. 19-cv-9677, 2021 U.S. Dist. LEXIS 3436, at *21 (S.D.N.Y. Jan. 7, 2021) (in an action brought by Mr. Sheehan, rejecting similar allegations in support of negligent misrepresentation claim).  Nor can Plaintiff ignore that the Pudding labeling was true and that the bases for Plaintiff's claims—that the Pudding was made with nonfat milk instead of whole milk and contains palm oil—"were public information, plainly available on the [Pudding's] ingredient label" and disclosure statement.  *Sarr*, 2020 U.S. Dist. LEXIS 225954, at *19.

There is no plausible argument that supports Plaintiff's claims for negligent misrepresentation for this consumer transaction.  Her claim for negligent misrepresentation fails because a special relationship "is nowhere pled." *Barreto*, 2021 U.S. Dist. LEXIS 3436, at *21.

### B. Plaintiff Fails to State Claims for Breach of Express or Implied Warranty Because There Was No Express Representation and the Product Was Merchantable

Plaintiff's similarly conclusory warranty claims all fail as a matter of law.  Nearly verbatim to the claim that was dismissed in *Twohig*, Plaintiff claims that Conagra "warranted to Plaintiff[] and class members that [the Pudding] possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which it did not." SAC ¶ 74; *see Twohig*, 2021 U.S. Dist. LEXIS 26489, at *23.  But, as in *Twohig*, Plaintiff points

"to no express statements on these subjects." *Id.* To the extent that Plaintiff claims the statement "Made With Real Milk*" somehow may serve as an express warranty that the Pudding's main source of fat was from milkfat, *see* SAC ¶ 75, this claim must be dismissed because "Made With Real Milk*" is not an affirmation of fact or promise about the composition of the Pudding's fat content. *See Twohig*, 2021 U.S. Dist. LEXIS 26489, at *23 ("Defendant's organic vanilla soymilk 'does not state it is [flavored] exclusively with [vanilla beans] and a reasonable consumer would not interpret the representation of 'Vanilla Soymilk' to make this claim.'") (quoting *Barreto*, 2021 U.S. Dist. LEXIS 3436, at *6); *Sarr*, 2020 U.S. Dist. LEXIS 225954, at *21-22 (dismissing breach of express warranty claim because the defendant truthfully represented that the mashed potatoes were "made with real butter" was true and "did not expressly warrant that the Mashed Potatoes did not contain vegetable oil").

Plaintiff's claim for breach of implied warranty of merchantability must also be dismissed because Plaintiff concedes she did not purchase the Pudding directly from Conagra and does not allege that she suffered any personal injury. *See* SAC ¶ 48. Absent privity of contract between Plaintiff and Conagra, a breach of implied warranty claim cannot lie except to recover for personal injuries. *See, e.g.*, *Sarr*, 2020 U.S. Dist. LEXIS 225954, at *22-23; *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015). The economic injuries alleged by Plaintiff do not qualify as "personal injuries." *Kolle v. Mainship Corp.*, 04-cv-711, 2006 U.S. Dist. LEXIS 28956, at *16 (E.D.N.Y. Apr. 20, 2006) (holding "where only economic loss is alleged, implied warranties do not run to remote purchasers."). Plaintiff's claims for breach of warranty all fail.[5]

---

[5] Finally, because Plaintiff's claims for breach of express or implied warranty fail, Plaintiff's claim under the MMWA similarly fails as a matter of law. *See Twohig*, 2021 U.S. Dist. LEXIS 26489, at * 23 n.8 (quoting *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y.

### C. Plaintiff's Fraud Claim Fails Because Plaintiff Cannot Allege Fraudulent Intent or Allege Fraud with Particularity

Keeping with the rest of her Complaint, Plaintiff again relies on general and conclusory allegations for her fraud claim that fail to satisfy the Federal Rules.  Under Rule 9(b)'s heightened pleading requirements, Plaintiff must not only specify "the time, place, speaker, and content of the alleged misrepresentations" and "how the misrepresentations were fraudulent[,]" but also allege sufficient "details that give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)).

Plaintiff's threadbare allegations do not "give rise to a strong inference of fraudulent intent," nor does Plaintiff plead facts to show "both motive and opportunity to commit fraud" or "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  She again ignores that no affirmative false ingredient claims are alleged, and that both palm oil and nonfat milk are clearly disclosed on the packaging. *See* SAC ¶¶ 5-6, 8-10.  Plaintiff instead baldly claims that Conagra "knew its emphasis on the Product's 'real milk' content drove sales of the Products and was aware this distinguishes its Products from competitors, to the detriment of consumers." SAC ¶ 82.  Even if the Court were to credit this conclusory statement, a "generalized motive to satisfy consumers' desires" and "increase sales and profits[] 'does not support a strong inference of fraudulent intent.'" *Sarr*, 2020 U.S. Dist. LEXIS 25594, at *26 (quoting *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *25 (E.D.N.Y. Aug. 29, 2013)).  And Plaintiff's

---

2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.")).

oblique reference to competitors' labeling of their products "is not nearly enough to conclude that [Conagra] had the requisite scienter for fraudulent misrepresentation." *See Davis*, 297 F. Supp. 3d at 337.

Plaintiff concludes that Conagra's "fraudulent intent is evinced by its failure to accurately describe the key components of the Products on the front label," speculating that Conagra "knew its statements were neither true nor accurate and would mislead consumers." SAC ¶ 83. This is a tried—and failed—allegation that appears in a number of actions brought by Mr. Sheehan. This Court should follow these courts and dismiss this claim for what it is: a bare conclusion that fails to "plead facts that give rise to a strong inference of fraudulent intent." *Twohig*, 2021 U.S. Dist. LEXIS 26489, at *19-20 (dismissing fraud claim brought by Mr. Sheehan based on substantially similar allegation); *Barreto*, 2021 U.S. Dist. LEXIS 3436, at *22 (same); *see Sarr*, 2020 U.S. Dist. LEXIS 25594, at *27 (rejecting a 2014 industry brochure of purported consumer beliefs because it did "not constitute *strong* circumstantial evidence of conscious misbehavior or recklessness") (emphasis in original).

These threadbare, conclusory allegations also fail to meet Plaintiff's burden to specify the circumstances constituting the alleged fraud under Rule 9(b). Plaintiff provides no details of her purchase of the Pudding. She does not describe what parts of the label she saw, what she did not see, or where she saw it. Plaintiff does not even detail whether she looked at the ingredients statement—"exactly the spot consumers are trained to look[,]" *Davis*, 297 F. Supp. 3d at 337—or at the "*Made With Nonfat Milk" disclosure on the top of the Pudding or explain how she maintained her irrational belief that the Pudding "fat content was exclusively or predominantly from . . . whole milk." SAC ¶ 47. "Plaintiff[] and the general consuming public are not free to ignore the ingredient list that does not include the words [whole milk]." *Cheslow*, 445 F. Supp.

3d at 20.  In short, these omissions underscore that Plaintiff has not—and cannot—allege *how* the labeling was allegedly fraudulent under Rule 9(b).  *Schwartzco*, 60 F. Supp. 3d at 344; *see also Chase v. Hobby Lobby Stores, Inc.*, No. 17-CV-00881, 2017 U.S. Dist. LEXIS 162909 at *9 (S.D. Cal. Oct. 2, 2017) (dismissing false advertising claim for failure to satisfy  Rule 9(b) because plaintiff did not allege whether she saw the asterisk in the challenged advertisement or if she read the corresponding disclaimer).  Accordingly, the Court should dismiss Plaintiff's fraud claim for failing to comply with both Rules 8 and 9.

### D.  Plaintiff's Unjust Enrichment Claim Fails as Duplicative of Her Other Claims

Plaintiff's claim for unjust enrichment likewise fails because it simply recirculates the same deficient allegations as the rest of her claims. An unjust enrichment claim "is not a catchall . . . to be used when others fail," *Sarr*, 2020 U.S. Dist. LEXIS 25594, at *28, and it will be dismissed where it simply replicates other claims. *See Weisblum*, 88 F. Supp. 3d at 296-97 (dismissing unjust enrichment claim that was duplicative of GBL claims); *Bowring*, 234 F. Supp. 3d at 392 (same). This rule has been repeatedly applied by New York's federal courts in dismissing tacked-on unjust enrichment claims and, specifically, unjust enrichment claims raised in nearly identical suits brought by Mr. Sheehan.  *See Twohig*, 2021 U.S. Dist. LEXIS 26489, at *24-25; *Barreto*, 2021 U.S. Dist. LEXIS 3436, at *8; *Sarr* 2020 U.S. Dist. LEXIS 25594, at *28;  *see also, e.g.*, *Davis*, 297 F. Supp. 3d at 338 (dismissing the unjust enrichment claim in a similar false-advertising case because "it merely duplicates plaintiffs other claims based on the same alleged misrepresentations").  Here, there is no meaningful distinction between Plaintiff's unjust enrichment claim and the other claims she raises in this action.  *Compare* SAC ¶¶ 85-86, *with id.* ¶¶ 59-84.  Therefore, there is no plausible basis for this claim to remain in this action.

**III.     Plaintiff Lacks Standing to Seek Injunctive Relief**

Courts in the Second Circuit dismiss claims for injunctive relief in labeling cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"). Recently, the Eastern District dismissed a claim for injunctive relief in another food labeling action for this very reason. *See Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way. He therefore lacks standing to seek an injunction.").

*Davis* is instructive.  Plaintiff admits she knows (1) "Made with Real Milk*" contains an asterisk indicating that the Pudding is "*Made With Nonfat Milk" and (2) the "ingredient list shows the Product contains 'Nonfat Milk.'" SAC ¶¶ 5-6, 9.  Accordingly, regardless of whether Plaintiff previously held sincere—but highly unreasonable—misunderstandings about the Pudding ingredients, those misunderstandings have now been disabused by her admitted actual knowledge. *Id.* She is therefore "now aware of the truth and will not be harmed again in the same way. [Sh]e therefore lacks standing to seek an injunction." *Davis*, 297 F. Supp. 3d at 339.

Plaintiff claims that she "would buy the Product again if assured its claims of 'real milk' meant it contained a non-*de minimis* amount of whole milk and accompanying amounts of nutrients present in whole milk[,]" SAC ¶ 49, but this allegation only further confirms that she lacks standing to pursue injunctive relief.  It is well-settled that a plaintiff establishes that she *lacks* standing where she merely alleges "that she will purchase the product in the future on the

condition that she can be assured that it is no longer deceptive." *In re Edgewell Pers. Care Co. Litig.*, No. 16-cv-3371, 2018 U.S. Dist. LEXIS 209023, at *43 (E.D.N.Y. Sep. 4, 2018); *Atik v. Welch Foods, Inc.*, No. 15-cv-5405, 2016 U.S. Dist. LEXIS 136056, at *6 (E.D.N.Y. Sept. 30, 2016) (concluding plaintiffs lack standing for injunctive relief where plaintiffs alleged they "would resume purchasing the Products in the future ***but only if*** the representations on the Products' labels were 'truthful and non-deceptive'") (emphasis added).   That is all Plaintiff alleges here.   *See* SAC ¶ 49.   She, therefore, lacks standing to pursue any injunctive relief in support of her deficient claims.

## IV.   Plaintiff Should Be Denied Leave to Amend Her First Amended Complaint A Second Time.

Plaintiff already amended her Complaint once after reviewing the Conagra's pre-motion letter stating the grounds on which it would move to dismiss.  *See generally* (Dkt. 13).  Yet even with the benefit of this first look at Conagra's arguments, Plaintiff did nothing to fix any of the deficiencies pointed out in the pre-motion letter.  This failure alone is sufficient grounds to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment . . . . Simply put, 'a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.'").  The Court should not allow Plaintiff a third bite at the apple.

## <u>CONCLUSION</u>

Conagra respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

March 4, 2021                        Respectfully submitted,


By:   */s/ Angela M. Spivey*
_____

      Angela M. Spivey (*pro hac vice*)
      Andrew G. Phillips (*pro hac vice*)
      Alston & Bird LLP
      1201 W. Peachtree Street
      Atlanta, Georgia 30309
      Phone: (404) 881-7000
      Fax: (404) 881-7777
      angela.spivey@alston.com
      andrew.phillips@alston.com

      Elizabeth Anne Buckel (Bar No. 5186689)
      Alston & Bird LLP
      90 Park Avenue
      New York, NY 10016
      Phone: (212) 201-1289
      Fax: (212) 210-9444
      Elizabeth.buckel@alston.com

      *Counsel for Conagra Brands, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed

on March 4, 2021, with the Court and served electronically through the CM/ECF system to all

counsel of record registered to receive a Notice of Electronic Filing for this case.


<u>*/s/* Angela M. Spivey  </u>
Angela M. Spivey