United States District Court
Southern District of New York

1:20-cv-04505-MKV

Jennifer Mena, individually and on behalf of
all others similarly situated,

               Plaintiff,

        - against -

Conagra Brands, Inc.,

               Defendant


Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
Spencer Sheehan
Christopher Patalano
60 Cutter Mill Rd Ste 409
Great Neck, NY 11021-3409
Tel: (516) 268-7080
spencer@spencersheehan.com
cpatalano@spencersheehan.com

*Attorneys for Plaintiff*

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 1

LEGAL STANDARDS ........................................................................................................ 3

ARGUMENT ....................................................................................................................... 4

I.      PLAINTIFF HAS PLAUSIBLY ALLEGED DECEPTION ............................................. 4

     A.      Defendant's Reliance on an Accurate Ingredient List Cannot Overcome *Mantikas* ................................................................................................ 5

     B.      *Mantikas* Applies because Reasonable Consumers Expect the Main Ingredient in Pudding to be Milk ........................................................... 7

     C.      Defendant's Allergen Argument is a Red Herring ................................. 8

     D.      Expecting Whole Milk in a Pudding Intended for Children is not Irrational .................................................................................................. 8

     E.      Defendant Deceptively Uses Nonfat Milk instead of Whole Milk ......... 9

     F.      The Product Lacks Sufficient Disclaiming Statements ......................... 11

II.     PLAINTIFF PROPERLY ALLEGED COMMON LAW CLAIMS ............................... 12

     A.      Plaintiff Properly Pled Negligent Representation Claims .................... 12

     B.      Plaintiff Properly Alleged Breach of Express Warranty Claims .......... 13

     C.      Implied Warranty Claims are Viable ..................................................... 14

     D.      Plaintiff Properly Pled Fraud Claims ................................................... 14

     E.      Plaintiff's Claims of Unjust Enrichment are Not Duplicative ............. 15

III.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ............................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-395 (DLI) (RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 3

*Bell v. Publix Super Markets, Inc.*,
  No. 19-2581, 2020 WL 7137786 (7th Cir. Dec. 7, 2020) .................................................. 5, 6

*Berni v. Barilla S.p.A.*, *et al. v. Schulman*,
  No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020) ................................ 15

*Bowring v. Sapporo U.S.A., Inc.*,
  243 F. Supp. 3d 386 (E.D.N.Y. 2017) ......................................................................... 12

*Burton v. Iyogi, Inc.*,
  No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ............................................ 15

*Campbell v. Whole Foods Market Group, Inc.*,
  No. 1:20-cv-01291 (GHW), 2021 WL 335405, at *8 (S.D.N.Y. Feb. 2, 2021) ................... 10

*Davis v. Hain Celestial Grp. Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ........................................................................... 6

*Duran v. Henkel of America, Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020) ........................................................................... 5

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ....................................................................................... 13

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
  624 F.3d 106 (2d Cir. 2010) ......................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................................... 15

*FTC v. Sterling Drug, Inc.*,
  317 F.2d 669 (2d Cir. 1963) ......................................................................................... 9

*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d 437 (2d Cir. 2015) ......................................................................................... 4

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ................................................................ 4

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................... 16

*Greene v. Gerber Products Co.*,
   262 F. Supp 3d 38 (E.D.N.Y. 2017) ................................................ 13

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-cv-4418 (ER), 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ...................... 4

*Henderson v. Gruma Corp.*,
   No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................................... 7

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir.1994) ................................................................ 15

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020) ...................................... 11, 14

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) .............................................. 6

*J.A.O.Acquisition Corp. v. Stavitsky*,
   8 NY3d 144 (2007) ........................................................................ 12

*Jackson v. Eddy's LI RV Ctr., Inc.*,
   845 F. Supp. 2d 523 (E.D.N.Y. 2012) ............................................ 14

*Karlin v. IVF Am., Inc.*,
   93 N.Y.2d 282 (1999) ...................................................................... 4

*Kennedy v. Mondelez Glob. LLC*,
   No. 19-cv-302 (ENV) (SJB), 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ............ 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
   797 F.3d 160 (2d Cir. 2015) ............................................................ 14

*Manchouck v. Mondeléz Int'l Inc.*,
   No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877,
   2013 WL 5400285 (N.D.Cal. Sept. 26, 2013) .................................. 7

*Mandarin v. Wildenstein*,
   16 N.Y.3d 181 (2011) ...................................................................... 12

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)................................................................. 4, 6, 7, 8

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................. 12

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d. Cir. 2015)................................................................. 4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995)............................................................................. 4

*Red v. Kraft Foods, Inc.*,
    No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461,
    2012 WL 5504011 (C.D. Cal. Oct.25, 2012)....................................... 7

*Rivera v. Navient Solutions, LLC*,
    2020 WL 4895698 (S.D.N.Y. August 19, 2020) ................................. 5

*Sarr v. BEF Foods*,
    No. 18-cv-6409 (ARR), 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13,
    2020) ..................................................................................................... 6

*Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*,
    __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045
    (E.D.N.Y. August 24, 2020) ................................................................. 11

*Solak v. Hain Celestial Grp., Inc.*,
    No. 3:17-cv-0704 (LEK) (DEP), 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y.
    Apr. 17, 2018) ....................................................................................... 6

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-cv-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ............................ 12

*Watson v. Kellogg Sales Co.*,
    No. 19-cv-01356 (DLC), 2019 WL 10734829 (S.D.N.Y. Oct. 29, 2019) ............................ 10

**Statutes**

N.Y. Gen. Bus. Law § 349.......................................................................... 1, 3, 4

N.Y. Gen. Bus. Law § 350.......................................................................... 1, 3, 4

**Rules**

Fed. R. Civ. P.  8(e)(2).............................................................................. 15

Fed. R. Civ. P. 12(b)(6).............................................................................. 3

Fed. R. Civ. P. 9(b) ................................................................................................................. 14

Plaintiff Jennifer Mena ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion by Defendant Conagra Brands, Inc. ("Defendant" or "Conagra") to dismiss the First Amended Complaint ("Am. Compl."). For the reasons below, the Court should deny Defendant's motion.

## INTRODUCTION

Plaintiff brings claims for damages for violations of New York General Business Law ("GBL") §§ 349 and 350 and common law claims on behalf of herself and a New York class.

Defendant argues that the claims in Plaintiff's Amended Complaint should be dismissed with prejudice because Plaintiff fails to state a plausible claim of deception. *See* Defendant Conagra's Memorandum of Law in Support of Defendant's Motion to Dismiss Class Action Complaint ("Def. Mem."). None of these arguments can be the basis for dismissal of Plaintiff's GBL or common law claims, and Defendant's motion should be denied.

## FACTUAL BACKGROUND

Defendant markets its Snack Pack Chocolate Fudge Pudding (the "Product") as "Made With Real Milk," next to a bottle of overflowing white milk. Am. Compl. at ¶¶ 4, 6. *See* below (representations circled).



Next to "Made With Real Milk" is a minute asterisk, the meaning of which is disclosed not

on the front, but on the top of the Product.



The asterisk states the Product is "Made With Nonfat Milk," which means the Product

lacks more valuable and desired milkfat, which has been substituted with lesser quality palm oil.

Am. Compl. at ¶ 12.

Plaintiff purchased the Product bearing the "Made With Real Milk" statement on the front

labeling. Am. Compl. at ¶ 48. Plaintiff saw and relied on these front label representations in believing that the Product contained whole milk and that the Product's milkfat content was not replaced by palm oil. Am. Compl. at ¶ 47. Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it. Am. Compl. at ¶ 36. As a result of this misleading labeling, the Product is sold at a premium price, as compared to similar competing products represented in a non-misleading way, Am. Compl. at ¶ 37, and its value was materially less than its value as represented by Defendant. Am. Compl. at ¶ 35.

Plaintiff asserts claims for violation of GBL §§ 349 and 350 Am. Compl. at ¶¶ 59-65, and common law claims, Am. Compl. at ¶¶ 66-86, on behalf of a proposed class of similarly situated consumers who purchased the Product and who reside in New York. Am. Compl. at ¶ 50. Plaintiff seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees. Am. Compl. at 13 (Prayer for Relief, ¶¶ 3-5).

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").

"Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*"). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "[A] plaintiff [need only] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a

plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418 (ER), 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013).

The "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

## ARGUMENT

## I. PLAINTIFF HAS PLAUSIBLY ALLEGED DECEPTION

Plaintiff brings claim under GBL §§ 349 and 350, which New York's highest court has recognized are founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999).

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.").

Whether a representation is likely to mislead a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss state." *Duran v. Henkel of*

*America, Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020); *see also Rivera v. Navient Solutions, LLC*, 2020 WL 4895698, at *7 (S.D.N.Y. August 19, 2020) ("a determination of whether a particular act or practice is misleading is not ordinarily appropriate for decision on a motion to dismiss").

### A.    Defendant's Reliance on an Accurate Ingredient List Cannot Overcome *Mantikas*

Defendant contends that "the Pudding's ingredients statement forecloses any claim that consumers would be misled." Def. Mem. at 14. This is contrary to *Mantikas*, where the Second Circuit concluded that "disclosures on the side of the box [do not] render Plaintiffs' allegations of deception implausible." *Mantikas*, 910 F.3d at 637 ("We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel [and ingredient list] on the side of the box to correct misleading information set forth in large bold type on the front of the box.").

Defendant's authorities are based on a non-existent and rejected consumer duty to investigate whether front label claims were consistent with the "fine print." *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. 2017) (dismissing claims that "100% Parmesan Cheese" would deceive consumers because a shelf-stable cheese would cause consumers to "investigate," thereby discovering on the ingredient list that it contained added cellulose.)

In reversing *100% Grated Parmesan Cheese*, the Seventh Circuit noted the reality of consumers purchasing groceries, stating that "an accurate fine-print list of ingredients does not foreclose as a matter of law" consumer deception. *Bell v. Publix Super Markets, Inc.*, No. 19-2581, 2020 WL 7137786, at *1 (7th Cir. December 7, 2020) ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product.").

Many of Defendant's authorities rely directly or indirectly on a recently overturned decision about 100% grated parmesan cheese. *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. 2017) (dismissing claims that "100% Parmesan Cheese" would deceive consumers because the product was a shelf-stable cheese, and reasonable consumers were required "to investigate" and discover the added cellulose); Def. Mem. at 7-15 citing, *e.g., Davis v. Hain Celestial Grp. Inc.*, 297 F. Supp. 3d 327 (E.D.N.Y. 2018) (citing *100% Grated Parmesan Cheese* and asking "whether the misleading element is ambiguous. If so, the clarification can defeat the claim."); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704 (LEK) (DEP), 2018 U.S. Dist. LEXIS 64270, at *33 (N.D.N.Y. Apr. 17, 2018) (quoting *Davis* citing *100% Grated Parmesan Cheese*); *Kennedy v. Mondelez Glob. LLC*, No. 19-cv-302 (ENV) (SJB), 2020 WL 4006197, at *13 (E.D.N.Y. July 10, 2020) (dismissing claims that alleged deception as to amount of honey or graham flour); *Sarr v. BEF Foods*, No. 18-cv-6409 (ARR), 2020 U.S. Dist. LEXIS 25594, at *7 (E.D.N.Y. Feb. 13, 2020).

In reversing *100% Grated Parmesan Cheese*, the Seventh Circuit noted the reality of consumers purchasing groceries, stating that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers. Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Bell v. Publix Super Markets, Inc.*, No. 19-2581, 2020 WL 7137786, at *1 (7th Cir. Dec. 7, 2020).

In *Mantikas*, the defendant-appellee repeated the same type of district court decisions defendant has here, which involved cases where "plaintiffs alleged they were misled about the quantity of an ingredient that obviously was not the products' primary ingredient." *Mantikas*, 910 F.3d at 638 ("reasonable consumers are likely to understand that crackers are typically made

6

predominantly of grain…They look to the bold assertions [Made With Whole Grain] on the packaging to discern what *type* of grain."). The same logic is even truer here. Defendant's representation of "Made With Real Milk" gives the false impression that the Product will contain real milkfat and whole milk.

B.   <u>*Mantikas* Applies because Reasonable Consumers Expect the Main Ingredient in Pudding to be Milk</u>

Defendant's reliance on the body of "Made With" decisions is just as inapplicable here as in *Mantikas*. Def. Mem. at 9. In *Mantikas*, the Court distinguished the cases relied on by Defendant, "in which consumers alleged that food product labels asserting that the food was 'made with' various ingredients misled [consumers] to believe that the stated ingredient was the dominant, or at least a major, ingredient." *Mantikas*, 910 F.3d at 638 citing *Manchouck v. Mondeléz Int'l Inc.*, No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877, at *4, 2013 WL 5400285, at *4 (N.D.Cal. Sept. 26, 2013) ("made with real fruit" not misleading because the product was a cookie); *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at * 17 (C.D. Cal. Apr. 11, 2011) ("made with garden vegetables" not misleading because the product was a dip, made from ingredients like sour cream and mayonnaise); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct.25, 2012) ("made with real vegetables" not misleading because a cracker is made from wheat).

This reasoning applies to Defendant's other authorities – *Harris*, *Reyes* and *Sarr* – where the label touted "real cocoa" and "real butter" even though these were not the main ingredeints in these foods.

Like the crackers in *Mantikas* which reasonable consumers expected to contain grain as their main ingredient, Plaintiff expected milk was the main ingredient in the pudding and "Made With Real Milk" gave the impression the Product contained whole milk. Am. Compl. at ¶¶ 2-3

("Pudding is a simple food with a central ingredient of milk. Whole milk is a preferred choice for pudding because it makes the product thicker and taste better."); *Mantikas*, 910 F.3d at 638 (reasonable consumers "look to the bold assertions on the packaging to discern what *type* of grain. The representation that a cracker is 'made with whole grain' would thus plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain.") (emphasis in original)

C.    Defendant's Allergen Argument is a Red Herring

Seeking a quick win based on preemption, Defendant injects an issue not even raised in the Amended Complaint – the "federally-mandated food allergen statement, again disclosing that the Pudding "Contains: Milk[,]." Def. Mem. at 10. The theory goes that *if* it can be argued that Plaintiff challenged something Defendant was *required* to disclose, the claims would correctly be preempted.

However, Plaintiff did not once contend that the basis for her expectation that the Product contained whole milk was due to the "allergen statement." Though Defendant purports to cite the Amended Complaint's reliance on this statement, it can only cite the picture of the ingredient list, which happens to contain this statement. Def. Mem. at 10 citing Am. Compl. at ¶ 9. The words "Contains: Milk" do not appear in the Amended Complaint.

D.    Expecting Whole Milk in a Pudding Intended for Children is Not "Irrational"

Defendant argues that it is "irrational" to expect "Real Milk" in a children's pudding product to contain milkfat, from whole milk. Def. Mem. at 10 ("contrary to the experience of typical consumers who see a variety of cow's milk in their supermarkets' dairy section"). Though consumers invariably see many varieties of milk in the dairy aisle, the Amended Complaint was specific in alleging that for *pudding*, "whole milk is a preferred choice." Am. Compl. at ¶¶ 3, 21 ("Milkfat is an important food component for the growing children the Product is marketed

8

towards.").

Defendant's raises another false argument by claiming Plaintiff's definition of "real" would include unlawful, "unpasteurized" milk. Def. Mem. at 7. While this claim is clever, it fails, because consumers cannot buy unpasteurized milk, for the reasons noted by Defendant.

It is not, as Defendant says, a "well-known fact[s] of life," that "real milk" in a children's pudding product will invariably be milk without its most valuable component. Def. Mem. at 10 quoting *Red*, 2012 WL 5504011, at *9.

E.    Defendant Deceptively Uses Nonfat Milk instead of Whole Milk

The Amended Complaint alleges that milkfat is the central component of milk. Am. Compl. at ¶¶ 22-23. The allegations do not hinge on what any regulations say because reasonable consumers expect that "real milk" in the context of a children's pudding refers to whole milk. Defendant claims that consumers do not care about the presence of "real [whole] milk," yet adds lower quality, cheaper ingredients – palm oil – to replace the milkfat from whole milk. If Defendant is to be believed, then it would not have attempted to add back the very thing it removed, but in a cheaper form. *See FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 675 (2d Cir. 1963) (finding "Advertisements as a whole may be completely misleading although every sentence separately considered is literally true").

At the heart of this case, Defendant's conduct is deceptive because "[i]t is misleading to promote milk without its most valuable constituent, milkfat, as 'real milk.'" Am. Compl. at ¶ 12. On its packaging, Defendant advertises the Product as containing "real milk." Am. Compl. at ¶¶ 4-5. Despite these representations, the Product is bereft of milkfat and uses palm oil, "a cheaper and nutritionally inferior ingredient." Am. Compl. at ¶ 32.

Plaintiff expected that the Product would contain the higher quality milkfat from real milk. Instead of receiving a Product with higher quality milkfat – from the "Real Milk" promoted in the

front-of-box representation, Plaintiff received a Product where the milkfat was replaced with lesser quality palm oil. Am. Compl. at ¶ 19 ("Palm oil is unable to provide an equivalent organoleptic experience to real, whole milk.").

"Made With Real Milk" in this case is an ingredient claim that Defendant's Product does not live up to. This case can be compared to the recent decision in *Campbell v. Whole Foods Market Group, Inc.*, No. 1:20-cv-01291 (GHW), 2021 WL 335405 (S.D.N.Y. Feb. 2, 2021). In *Campbell*, plaintiffs alleged, *inter alia*, that a "honey graham" cracker was misleading because the product's primary sweetener was not honey. *Id*. at *8. The "design of the packaging suggest[ed] that honey is an ingredient." *Id*. The product's front label contained the word "Honey" written in large font and a "white bowl full of honey." *Id*. at *1. The court concluded that "honey is both a flavor and a sweetening ingredient. So even if 'honey' were intended solely as a reference to the flavor of the Product, a reasonable consumer could expect that the source of the honey flavor was actual honey—an ingredient." *Id* at *8; *Watson v. Kellogg Sales Co.*, No. 19-cv-01356 (DLC), 2019 WL 10734829, at *1 (S.D.N.Y. Oct. 29, 2019) (relying on *Mantikas*, "With respect to the GBL and express warranty claims, I'm permitting those to proceed. With respect to the word 'graham,' 'g-r-a-h-a-m,' as in graham crackers but not with respect to the word 'honey.'").

The same logic holds here. The "Made With Real Milk" representation is made in a prominent font on the front label (and top label), and this representation is juxtaposed with a bottle of pure white milk. Am. Compl. at ¶ 4. Therefore, Plaintiff believed that the "Real Milk" in the Product would be just that—milk and milkfat provided by whole milk. Am. Compl. at ¶ 47 ("[P]laintiff purchased the Product . . . in reliance on the representations the Product's fat content was exclusively or predominantly from "real milk," understood by her as whole milk.").  Instead,

the amount of "Real Milk" in the Product is, at most, *de minimis* and the milkfat in the Product is replaced by palm oil. *See*

    F.    <u>The Product Lacks Sufficient Disclaiming Statements</u>

    Though the front label representation of "Made With Real Milk" gives the impression the Product contains flavor from whole milk and real milkfat, consumers are only informed that the Product instead contains nonfat milk through the use of a miniscule asterisk. Am. Compl. at ¶ 6; ¶ 8 ("The 'Made With Real Milk' Claim on the front label tab has the same asterisk, but the explanation for this statement is not present."); *see Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*, __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045 at *5 (E.D.N.Y. August 24, 2020) ("[B]y looking at the products' Nutrition facts, plaintiffs could not even confirm the presence of ethyl vanillin in the beverages."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020) (denying motion to dismiss where chocolate label failed to disclaim the product's actual origin).

    As in *Sharpe*, Plaintiff has alleged that the "Real Milk" representation communicates the false message that the milk and milkfat in the Product comes from higher quality whole milk when the quantity of milkfat is *de minimis* and is instead replaced by lower quality palm oil. The asterisk statement is an insufficient disclaimer. *See Sharpe*, 2020 WL 4931045, at *3-5 (products stated, "Naturally and Artificially Flavored" but this disclosure was insufficient where plaintiff must "maneuver and rotate the bottle.").

    The instant case joins a line of cases where courts refused to dismiss a complaint in which defendant's did not properly make certain disclosures.

    The cases cited by the Defendant are unavailing and demonstrate the strength of Plaintiff's claim here. *Nelson*, notes, "Whether or not a disclaimer defeats a claim of deception requires an analysis of 'factors such as the font size and placement of the disclaimer as well as the relative

emphasis placed on the disclaimer and the allegedly misleading statement." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 675 (E.D.N.Y. 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826 (MKB), 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015)). In *Nelson*, the disclaiming information as to the product's origin was explicitly placed in all capital letters on every can and the consumer did not have to maneuver the packaging to view the disclaimer. *Nelson*, 246 F. Supp. at 675-76; *see also Bowring v. Sapporo U.S.A., Inc.*, 243 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017) ("[T]he disclosure statement on Sapporo appears in contrasting, visible font, and states in clear language where the product is produced."). Here, the consumer viewing the Product from the front likely will not register the asterisk for what it is and the referenced "Made With Nonfat Milk" statement is made is small font. Am. Compl. at ¶ 6 ("Made With Real Milk" appears to be followed by a copyright or trademark symbol."); ¶ 7 (noting small size of the referenced "Made With Nonfat Milk" statement). Crucially, the front label does not contain the disclaimer, and the consumer must maneuver the Product to the top label to find the small font "Made With Nonfat Milk" disclaimer. *See, e.g.*, *Ackerman v. Coca-Cola Co.*, No. 09-cv-395 (DLI) (RML), 2013 WL 7044866, at *15-16 (E.D.N.Y. July 18, 2013) (noting that the sugar content disclosure on product's nutrition label "[did] not eliminate the possibility that reasonable consumers may be misled.").

## II.   PLAINTIFF PROPERLY ALLEGED COMMON LAW CLAIMS

### A.   Plaintiff Properly Pled Negligent Representation Claims

Plaintiff has established a claim for negligent misrepresentation based on (1) the existence of a special or privity-like relationship; (2) that the information conveyed from the seller to the buyer was incorrect; and (3) the buyer reasonably relied on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007).

Though Defendant claims there existed no special relationship or duty, this disregards that the relationship approached that of privity because: "(1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F. Supp 3d 38, 75 (E.D.N.Y. 2017).

Negligent misrepresentation may still properly be pled where the plaintiff "emphatically" alleges (1) the speaker held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Greene*, 262 F. Supp 3d at 75. Plaintiff adequately alleged that Defendant held such expertise and knew consumers would rely upon their representations. Am. Compl. ¶ 69.

B.     Plaintiff Properly Alleged Breach of Express Warranty Claims

To state a claim for breach of express warranty, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) a buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

Plaintiff alleged that (1) Defendant expressly warranted that its Product's milk content was from "real milk," which includes real milkfat; (2) Defendant breached the express warranty because the Product contains *de minimis* milkfat from real milk and is replaced by nonfat milk and palm oil; (3) Defendant knew the purpose for which its representations were to be used – for consumers seeking a product with real milk from whole milk with real milkfat; (4) Defendant's description – "Made With Real Milk" – did not conform to what she received, due to Product containing nonfat milk and palm oil; and (5) she purchased the Product based upon these representations. Am. Compl. at ¶¶ 73-80. *Goldemberg*, 8 F. Supp. 3d at 482-83 (denying motion

to dismiss express warranty claims based on "Active Naturals" containing mostly synthetic ingredients); *see also*, *Hesse*, 463 F. Supp. at 469 ("[I]t is a question of fact, not law, whether the representation is a promise or description of the goods.").

C.   <u>Implied Warranty Claims are Viable</u>

In New York, an implied warranty of merchantability is governed by §2-314 of the New York Uniform Commercial Code ("UCC"). To be merchantable, goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality of such goods. *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 527 (E.D.N.Y. 2012). Though Plaintiff does not allege that the Product was "unfit for human consumption," it was not "capable of passing without objection in the trade" because it contained lower quality palm oil in place of milk fat despite the front label "Made With Real Milk" representation.  Am. Compl. ¶¶ 12, 79.

D.   <u>Plaintiff Properly Pled Fraud Claims</u>

Defendant claims that Plaintiff fails to plead fraud with the required particularity of Fed. R. Civ. P. 9(b). Def. Mem. at 21-23. To satisfy this requirement, a "complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015). The FAC exceeds this standard.

Defendant was the speaker of the representations and omissions with respect to the amount and proportion of real milk in the Product and the Product's milkfat content. Am. Compl. at ¶¶ 1-6, 81-84. The statements and omissions were fraudulent because the Product did not disclose that the Product used nonfat milk in place of real whole milk and replaced milkfat with palm oil. Am. Compl. ¶ 47. These allegations meet the "primary purpose of Rule 9(b)" which "is to afford

14

defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

      E.      <u>Plaintiff's Claims of Unjust Enrichment are Not Duplicative</u>

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Def. Mem. at 23. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying dismissal of unjust enrichment because "it is well-settled that parties may plead in the alternative").

To the extent this Court finds that Plaintiff does not state claims pursuant to the GBL or common law claims, the Court may hold that Plaintiff's unjust enrichment claims are viable. Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of unjust enrichment is premature.

## III.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiff has standing to pursue injunctive relief because she is unable to rely on the Product's labels in the future, which causes her to avoid purchasing the Product even though she would like to. This constitutes an imminent threat of future harm sufficient to satisfy Article 3's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

A recent Second Circuit opinion does not stymie Plaintiffs' request for injunctive relief. *Berni v. Barilla S.p.A.*, *et al. v. Schulman*, No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020). The court in *Berni* correctly recognized that for purposes of class certification, injunctive relief addressed to past conduct was insufficient to meet the requirements of Rule 230(b)(2). Plaintiff here, as proposed class representative, seeks monetary damages *in addition to*

injunctive relief. In *Berni*, millions of other class members would have their rights extinguished in support of a settlement which granted them fictitious relief in the form of a "fill-line." This case, at the pleading stage, does not require a conclusion which denies any injunctive relief.

Thousands of courts have concluded that the inability to rely on the labels in the future, as alleged in the Amended Complaint, constitutes a threat of harm. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("plaintiffs have standing to seek injunctive relief…because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 at 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Date:   March 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
spencer@spencersheehan.com

Christopher Patalano
cpatalano@spencersheehan.com

60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3409
Tel: (516) 268-7080

16

1:20-cv-04505-MKV
United States District Court
Southern District of New York

Jennifer Mena, individually and on behalf of all others similarly situated,

                    Plaintiff,

         -against-

Conagra Brands, Inc.,

                    Defendant

---

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

---

Sheehan & Associates, P.C.
60 Cutter Mill Rd Ste 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   March 18, 2021

                        /s/Spencer Sheehan

**Certificate of Service**

I certify that on March 18, 2021, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☒ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☒ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan